**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVELYN BRIGANDI, | |
| *Plaintiff,* | Civil Action No. 13-5193 |
| v. | |
| JOHN WILEY & SONS, INC., et al., | OPINION |
| *Defendant.* | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter comes before this Court on Defendants John Wiley & Sons, Inc. ("Wiley"), Juanita Thompson, Donna Ketler, and Sesha Bolisetty's (collectively, "Defendants") motion for summary judgment [Dkt. No. 30]. This motion is decided without oral argument. See Fed. R. Civ. P. 78. For the reasons set forth herein, Defendants' motion is **GRANTED**.

I. FACTS

Plaintiff filed this action against Defendants alleging violations of the New Jersey Law Against Discrimination ("NJLAD"), the New Jersey Family Leave Act ("NJFLA"), and the federal Family Medical Leave Act ("FMLA"). See Compl. ¶ 1. Plaintiff claims she was terminated from her temporary position as a Media Specialist because of her pregnancy and/or her anticipated maternity leave. Id. ¶ 2.

In 2005, Plaintiff began working for Wiley, a global publishing company. Defs. Statement ¶¶ 1, 12. Plaintiff worked in the Media Group within the Global Education business unit. Id. ¶ 13. Plaintiff resigned from Wiley in May 2007, but returned to the Media Group a

month later. Id. ¶¶ 15-16. In 2010, some members of the Media Group, including Plaintiff, were transferred to the Content Management Group, which was managed by Defendant Donna Ketler. Id. ¶¶ 28, 29. Following another reorganization in July 2011, Defendant Juanita Thompson was transferred to the Content Management Group. Id. ¶¶ 31-32. As of July 2011, Plaintiff began reporting to Ms. Thompson, who then reported to Ms. Ketler. Id. ¶¶ 34-35.

The First Temporary Staffing Reductions

In 2011, Ms. Ketler, at the request of her supervisor, Ann Berlin, begin reviewing temporary employee staffing and costs because temporary employees were paid more than their full-time equivalents.[1] Ketler Cert. ¶ 11; Defs. Statement ¶ 17. On October 19, 2011, Ms. Ketler sent an e-mail to Ms. Berlin advising that the company was spending approximately $94,000 per month on temporary employees. See P-25, attached as Ex. B to Thompson Cert.

On November 30, 2011, Ms. Ketler emailed a PowerPoint presentation to Ms. Berlin, in which Ms. Ketler proposed reducing salary costs, in part by converting certain temporary employee positions to full-time positions. See P-26, attached as Ex. B to Thompson Cert. Plaintiff was one of ten temporary employees identified in the document. Id.

On February 6, 2012, Ms. Ketler sent two emails proposing actions to take regarding the ten temporary employees listed in the November 2011 PowerPoint. See Ex. 1 to Ketler Cert. In both documents, it was proposed that Plaintiff be terminated. Id.

For the next few months, Ms. Ketler and Ms. Berlin continued to revise the proposed cost-reduction and employee terminations. See Ex. 2 to Ketler Cert ("We would like to start

---

[1] While Plaintiff now argues she was not a temporary employee, the Court disagrees. Plaintiff previously acknowledged her temporary status in writing and has recognized that Wiley considered her to be a temporary employee. See Defs. Statement ¶¶ 18, 19; Pl. Dep. Tr., attached as Ex. D to Thompson Cert. at 26:7-21, 33:7-34:19; Ex. 4 to Ketler Cert. (recognizing that some temporary employees had, as of 2012, been working for Wiley for over five years).

2

bringing some of the freelancers in as full-time staff and transition most of the others out."); Ex. 3 to Ketler Cert. The proposed plan for Plaintiff remained termination. Id. On May 7, 2012, senior management approved "the reorganization and conversation of freelance to full-time employees." Ex. 4 to Ketler Cert.

As part of Ms. Ketler's plan, two temporary Media Specialists were to be converted into full-time employees. See Defs. Statement ¶¶ 51, 55. Therefore, in May 2012, Ms. Ketler sent an email to seven of the eight remaining temporary employees,[2] including Plaintiff, encouraging them to apply for these positions. Defs. Statement ¶ 55; see also P-18, attached as Ex. B to Thompson Cert. Plaintiff then met with Ms. Ketler to discuss these full-time positions. Defs. Statement ¶ 58. Ms. Ketler testified that, during this conversation, she recommended that Plaintiff apply for these positions because she could not "guarantee that temporary jobs will still be around" and she would not be able to inform Plaintiff if her job was going to be eliminated. Def. Statement ¶¶ 59-61. Plaintiff does not deny that Ms. Ketler made these statements; instead Plaintiff testified at her deposition that she did not remember if these statements were made. Pl. Statement ¶¶ 59-61. Plaintiff chose not to apply for one of these positions because the salary was less. Brigandi Decl. ¶ 20. These full-time positions were ultimately offered to two temporary employees. See Ketler Supp. Cert. ¶ 6. One temporary employee accepted the position, but the other declined.

The June 5, 2012, Reduction

On June 5, 2012, Ms. Ketler proposed a second round of temporary-staff cuts to realize additional savings and because she had sufficient full-time staff to handle the temporary employees' work. See Defs. Statement ¶ 67; Ex. 4 to Ketler Cert.; Ketler Supp. Cert. ¶ 7. As

---

[2] As of May 2012, two of the ten temporary employees that Ms. Ketler had identified in November 2011 had already left the company.

3

part of this plan, five employees were listed for termination: (1) Plaintiff; (2) Ms. Mullin; (3) Mr. Gass; (4) Ms. Valdez; and (5) Mr. Caruso. Id. By this time, Mr. Caruso had already been terminated. Def. Statement ¶ 72. Ms. Mullin and Mr. Gass were terminated between May 1, 2012, and July 31, 2012. Id. ¶ 75. Ms. Valdez was terminated between August 1, 2012, and October 31, 2012. Id. ¶ 76. Thus, as of the end of October 2012, Plaintiff was the only employee identified for termination who had not yet been terminated.

All temporary employee terminations were kept confidential to avoid any business disruption and temporary employees were provided two weeks of notice. Defs. Statement ¶¶ 77, 78.

The November 2012 Termination Decision

In November 2012, Ms. Ketler sent another email regarding temporary-employee cost savings to Defendant Sesha Bolisetty (Ms. Berlin's replacement). See P-32, attached as Ex. B to Thompson Cert. Attached to this email were two documents titled "FY12 Temp Savings Summary.ppt" and "Dept16610TempFY12.xls." In one attachment, the "Plan" for Plaintiff reads: "terminate 2/1 current PEs pick-up work." Id. Defendants have explained that this refers to the decision to terminate plaintiff on February 1, 2013, with the plan that current production editors would assume her work. Ketler Cert. ¶ 25.

On December 20, 2012, Plaintiff informed Ms. Thompson that she was pregnant. Defs. Statement ¶ 86. This was the first time Plaintiff informed anyone at Wiley that she was pregnant. Id. ¶ 87.

On January 2, 2013, Ms. Ketler informed Ms. Thompson and other Wiley employees via email that they "need[ed] to move forward with [their] respective pieces of the 4th quarter temp

savings plan." See JT-5, attached as Ex. C to Thompson Cert. The email directed Ms. Thompson to "plan to tell [Plaintiff] by 1/15 of her 2/1 termination." Id.

On January 10, 2013, Plaintiff attended a staff meeting and was given new assignments. Brigandi Decl. ¶ 14. At this meeting, Plaintiff "made a general announcement" that she was pregnant. Id. ¶ 15. Four hours later, Plaintiff received an email from Ms. Thompson directing Plaintiff to meet with her the following day. Id. ¶ 16. The next day, Plaintiff met with Ms. Thompson and was informed that she would be terminated on February 1, 2013 – the date listed in the attachment to Ms. Ketler's November 2012 email and Ms. Ketler's January 2, 2013, email. Id. ¶ 17; Defs. Statement ¶¶ 89, 90.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

## III. ANALYSIS

Plaintiff brings five causes of action: (1) NJLAD – Discrimination; (2) FMLA Interference; (3) FMLA Retaliation; (4) NJFLA Interference; and (5) Aiding and Abetting by Ms. Thompson, Ms. Ketler, and Ms. Bolisetty.

5

### A. NJLAD – Discrimination

The Supreme Court of New Jersey has adopted the analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) for adjudicating claims brought under the NJLAD. See Marzano v. Computer Sci. Corp., Inc., 91 F.3d 497, 503 (1996). Under this framework:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Id.

Generally, a plaintiff alleging discriminatory termination satisfies its *prima facie* burden by establishing: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was dismissed despite being qualified; and (4) she was replaced by a person outside the protected class. Id. When an employee is terminated as part of a reduction in force ("RIF"), however, a plaintiff need not demonstrate that she was replaced by someone outside the protected class. Id. Instead, the plaintiff satisfies her burden by demonstrating that she was discharged while the employer retained someone outside the protected class. Id.

Plaintiff has failed to establish a *prima facie* case of pregnancy discrimination[3] because she has not shown Defendants knew she was pregnant when the decision to terminate her was

---

[3] While the term "pregnancy" was added to NJLAD's list of protected classifications after Plaintiff's termination, pregnancy discrimination was a viable theory of recovery when Plaintiff was terminated. See, e.g., Spagnoli v. Brown & Brown Metro, Inc., No. 06-414, 2007 WL 2362602, at *7 (D.N.J. Aug. 15, 2007) (collecting cases demonstrating pregnancy

6

made. "[I]n order to establish a *prima facie* claim of discrimination, a plaintiff must prove that the employer had knowledge that the plaintiff belongs to a protected class" at the time the employer decided to take the adverse employment action. See Geraci v. Moody-Tottrup Int'l, Inc., 82 F.3d 578, 580-81 (3d Cir. 1996) (affirming summary judgment for employer on Title VII pregnancy discrimination claim when employee was terminated after she revealed she was pregnant, but the decision to terminate her was made before the employer was aware of her pregnancy); Cioni v. Globe Specialty Metals, Inc., No. 10-1388, 2013 WL 1844752, at *2 (D.N.J. Apr. 30, 2013) (applying Geraci to a NJLAD claim). After a year of terminating temporary employees as part of a cost-saving measure, Wiley made the decision to terminate Plaintiff on November 20, 2012, which would be effective on February 1, 2013. A January 2, 2013, email to Ms. Thompson confirmed that termination would go forward as planned. Thus, when Plaintiff informed Ms. Thompson of her pregnancy on December 20, 2012, the decision to terminate Plaintiff had already been made.

In arguing that she has met her *prima face* burden, plaintiff asserts that the decision to terminate her was not made until January 10, 2013, just "four hours" after Plaintiff made the general announcement of her pregnancy. Apparently, Plaintiff's theory is that the company's decision to terminate, as per Ms. Ketler's email of November 20, 2012, and her subsequent email of January 2, 2013, were somehow reversed by some unidentified person (which explains why Plaintiff was assigned new work on January 10, 2013) and then made anew by some other unknown person just hours after, and presumably because, Plaintiff announced her pregnancy. This theory ignores the unrefuted evidence that the decision to terminate Plaintiff on February 1, 2013, was made on November 20, 2012. The theory is based on pure speculation, and such

---

discrimination was a viable legal theory prior to NJLAD's 2014 amendment). Thus, Plaintiff can proceed under that theory of discrimination.

speculation is insufficient to defeat summary judgment. See Geraci, 82 F.3d at 582; Cuozzo v. Davis-Standard, LLC, No. 10-2276, 2012 WL 845927, at *4 (D.N.J. Mar. 13, 2012); Russo v. Chico's FAS, Inc., No. 10-1624, 2011 WL 4901357, at *7 (D.N.J. Oct. 14, 2011).

Even if Plaintiff had met her *prima facie* burden, the Court separately finds that Plaintiff has failed to carry her burden at step three of the McDonnell Douglas analysis.

When an employer articulates a legitimate, non-discriminatory basis for termination, a plaintiff must then demonstrate that this reason is mere pretext. See Hancox v. Lockheed Martin Tech. Servs., No. 04-6104, 2007 WL 1796248, at *7 (D.N.J. June 21, 2007). "To make a showing of pretext, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton v. Teleflex Inc., 707 F.3d 417, 430 (3d Cir. 2013) (citation and quotation omitted). "The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id.

Here, Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination: Wiley sought to streamline its staffing and replace expensive temporary employees with less expensive full-time employees or temporary assistants, or terminate the temporary employees without hiring any replacement. See Ketler Cert. ¶ 14. Thus, the burden shifts to Plaintiff to establish this justification is pretextual. As set forth above, Plaintiff refers to the following circumstantial evidence to suggest Defendant's reason was mere pretext: (1) after

receiving Ms. Ketler's January 2, 2013, email regarding Plaintiff's termination, Ms. Thompson nonetheless assigned Plaintiff work at the January 10, 2013, meeting; (2) after Plaintiff publicly announced her pregnancy, Ms. Thompson asked to meet with Plaintiff privately the next day; and (3) at that meeting, Ms. Thompson notified Plaintiff that she would be terminated effective February 1, 2013. See Pl. Opp'n Br. at 15-16. These facts would not permit a factfinder to either disbelieve Defendant's reason for terminating Plaintiff or that an invidious discriminatory reason was more likely than not a motivating or determining cause of the termination. As set forth above, Plaintiff has offered no evidence to call into question the clear evidence demonstrating Plaintiff was terminated as part of Ms. Ketler's cost-saving efforts and that this decision was made months before Plaintiff was notified of her termination.

Plaintiff cannot point to any evidence at all to suggest that other decision-makers were involved in a last minute decision to reverse the termination decision made in November 2012, and to reinstate the decision just hours after Plaintiff made a general announcement that she was pregnant.[4] "Speculations, generalities, and gut feelings, however genuine, do not allow for an inference of discrimination to be drawn when they are not supported by specific facts." Russo, 2011 WL 4901357, at *9; Toy v. Boeing Co., No. 14-3230, 2015 WL 2261879, at *8 (E.D. Pa. May 13, 2015). Because Plaintiff has failed to rebut Defendant's legitimate, non-discriminatory

---

[4] Plaintiff attaches great weight to the fact that Ms. Thompson's assigned Plaintiff work on January 10, 2013. That fact, however, is fully consistent with Ms. Ketler's directions to keep termination decisions confidential until the employee is notified of his or her termination to avoid any business disruption and to provide temporary employees two weeks of notice. Def. Statement ¶¶ 77, 78; Ketler Cert. ¶ 23.

Furthermore, Plaintiff's opposition expends considerable effort to demonstrate the particulars of the staffing reductions (e.g., the dates of implementation and affected personnel) were moving targets. But one constant of that plan was Plaintiff's termination. Indeed, the evidence demonstrates that Defendants had planned to terminate Plaintiff as far back as February 2012, and adhered to that plan until finalizing it on November 20, 2012.

reason for terminating her, summary judgment must be granted. See Silvestre v. Bell Atl. Corp., 973 F. Supp. 475, 484 (D.N.J. 1997), aff'd, 156 F.3d 1225 (3d Cir. 1998).

### B. FMLA Retaliation

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012). Because Plaintiff's claims are based upon circumstantial evidence, again the McDonnell Douglas framework guides the Court's analysis. Id. at 302. To establish her *prima facie* case, Plaintiff must demonstrate "(a) invocation of an FMLA right, (b) termination, and (c) causation." Id. at 303. To establish causation, Plaintiff "must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination." Id. at 307.

Here, Plaintiff has failed to demonstrate a causal connection between the decision to terminate her and any invocation of an FMLA right. Plaintiff is correct that when "temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality and defeat summary judgment." Id. But, Plaintiff incorrectly measures the time period between the announcement of her pregnancy and the adverse action. Assuming Plaintiff's January 10, 2013, announcement of her pregnancy constituted an invocation of FMLA leave, the decision to terminate Plaintiff had already been made. Thus, there is no causal connection between the decision to terminate Plaintiff and the invocation of any FMLA right.

Even if the Court were to conclude that Plaintiff had met her *prima facie* burden, the Court finds, for the reasons set forth above, Plaintiff has failed to demonstrate Defendants' justification for terminating Plaintiff was pretext.

### C. FMLA Interference and NJLAD Interference[5]

"To present a[n interference] claim under the FMLA, a plaintiff must show: (1) [s]he is an eligible employee, (2) the defendant is a 'covered employer,' (3) [s]he is entitled to leave under the FMLA, (4) [s]he gave the employer notice, and (5) the defendant denied or interfered with the plaintiff's FMLA benefits." Rojas v. Acuity Brands Lighting, Inc., No. 12-2220, 2014 WL 2926510, at *12 (D.N.J. June 27, 2014). To demonstrate interference, "the employee only needs to show that (1) [s]he was entitled to benefits under the FMLA and (2) that [s]he was denied them." Id. at *14 (quoting Sommer v. Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006)). Therefore, a "employee need not show that he was treated differently than others[, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision." Sommer, 461 F.3d at 399. Nonetheless, a plaintiff cannot pursue a FMLA interference claim when the decision to terminate the plaintiff was made before the plaintiff requests a right under the FMLA. Atchison v. Sears, 666 F. Supp. 2d 477, 489-90 (E.D. Pa. 2009) ("No FMLA violation occurs where an employer has already decided to terminate the employee before the employee requests FMLA leave.") (quoting Reinhart v. Mineral Techs. Inc., No. 05–4203, 2006 WL 4050695, at *13 (E.D. Pa. Nov. 27, 2006)). As set forth above, Plaintiff has failed to demonstrate that the decision to terminate her was made after she invoked her rights under the

---

[5] "Due to the similarity of the statutes, courts apply the same standards and framework to claims under the FMLA and the NJFLA." Yamamoto v. Panasonic Corp. of N. Am., No. 12-2352, 2013 WL 3356214, at *8 (D.N.J. July 2, 2013) (quoting Wolpert v. Abbott Labs., 817 F. Supp. 2d 424, 437 (D.N.J. 2011)).

FMLA. Thus, summary judgment must be granted for Defendants as to Plaintiff's FMLA Interference and NJFLA Interference claims.[6]

### D. Aiding and Abetting

Because Plaintiff's NJLAD, FMLA, and NJFLA claims have been dismissed, Plaintiff's Aiding and Abetting claim must also be dismissed. Sampson v. Methacton Sch. Dist., No. 11-4553, 2015 WL 641216, at *20 (E.D. Pa. Feb. 12, 2015); Roman v. Waste Mgmt. of N.J., No. 10-4337, 2011 WL 1807642, at *5 (D.N.J. May 12, 2011).

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED**. An appropriate order will follow.

/s Madeline Cox Arleo
HON. MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE

---

[6] Separately, Plaintiff's interference claim should be dismissed as duplicative. See Lichtenstein, 691 F.3d at 314 n.25; Beese v. Meridian Health Sys., Inc., No. 11-7505, 2014 WL 3519124, at *9 (D.N.J. July 16, 2014).